■ COUNTY OF NASSAU, Appellant, v H. SAND & Co., INC., Respondent.—In an action to recover damages for breach of a construction contract, the plaintiff appeals from an order of the Supreme Court, Nassau County (Robbins, J.), dated February 2, 1988, which granted, after a trial pursuant to CPLR 3212 (c), the defendant's motion for summary judgment dismissing the complaint as barred by the applicable Statute of Limitations.

Ordered that the order is affirmed, with costs.

The defendant constructed heating, ventilating and air-conditioning systems in the plaintiff's utilities plant. On December 4, 1979, the plaintiff commenced this breach of contract action against the defendant to recover damage for defective construction. Thereafter, the defendant moved for summary judgment dismissing the complaint as time barred.

A cause of action predicated upon defective construction accrues upon completion of "actual physical work" on the construction contract *(Cabrini Med. Center v Desina,* 64 NY2d 1059, 1061; *Phillips Constr. Co. v City of New York,* 61 NY2d 949; *State of New York v Lundin,* 60 NY2d 987). In this case, the key date for Statute of Limitations purposes is December 4, 1973. In accordance with a prior decision and order of this court, a trial was conducted pursuant to CPLR 3212 (c) to determine if actual physical work under the contract was completed prior to December 4, 1973 *(see, County of Nassau v Sand & Co.,* 114 AD2d 483).

The admissible evidence proffered by the plaintiff did not suffice to controvert the defendant's testimonial and documentary proof that the only work performed after December 4, 1973 was its subcontractor's routine recalibration of temperature controls. The fact that the defendant did not certify the

temperature controls, an open punch list item, 100% complete until the submission of its final requisition for payment covering the period from April 16, 1973 to September 30, 1974, did not suffice to create a genuine triable issue of fact that ongoing construction occurred after December 4, 1973. The two prior requisitions for payment (No. 21, covering the period June 7, 1972 to July 1, 1972; and No. 22, covering the period July 1, 1972 to June 5, 1973) indicated that the temperature control item was already 99% complete, leaving only a small amount, valued at less than one tenth of 1% of the total contract, which was done between April 15, 1973 and September 30, 1974. Furthermore, the only rational inference to be drawn is that the temperature controls were fully installed and calibrated as of May 7, 1973, when the defendant's project manager notified the plaintiff that all punch list items had been completed but requested an extension of time to process the paper work needed to enable the defendant to obtain payment for completed change order work could be processed. The defendant's project manager John Quinn explained that the temperature control item was left open on requisition No. 22, which covered the period ending June 5, 1973, in order to keep the contract open so the paper work pertaining to payment for completed change order work. The defendant's project manager John Quinn explained that the temperature control item was left open on requisition No. 22, which covered the period ending June 5, 1973, in order to keep the contract open so the paper work pertaining to payment for completed change order work could be processed. Moreover, the plaintiff's project manager Walter Strauss conceded that Quinn's letter of August 26, 1974, which notified the county with respect to an open item that its subcontractor had completed the calibration of the Bristol systems and BTU meters, was, as testified by Quinn, a reference to recalibration work. The recalibration of operational temperature controls, which had been calibrated when initially installed before the key Statute of Limitations date, was done over two years after the county had accepted beneficial occupancy of the heating, ventilating and air-conditioning systems and after the guarantee period for those systems had expired. The recalibration of the temperature controls at issue merely consisted of turning an "Allen screw" while checking the flow rate of chill water, hot water, and steam with a portable flow meter. Quinn characterized the recalibration of temperature controls as a routine adjustment necessitated by change in load use by the county, as when the county placed in operation 2, rather than 1, boilers.

Based upon the probative evidence adduced at the trial, the trial court correctly found, as a matter of law, that evidence of the routine recalibration of temperature controls was not proof that actual construction had not already been completed prior to December 4, 1973, but merely disclosed that an incidental punch list item relating to the project remained open (see, State of New York v Lundin, 60 NY2d 987, supra; see also, Phillips Constr. Co. v City of New York, 61 NY2d 949, 951, supra).

Even if the recalibration of latently defective temperature controls is characterized as repair work in light of the testimony of the plaintiff's project manager that the temperature control panel never functioned "acceptably" prior to December 4, 1973, such repair work was at most incidental to the construction of the heating, ventilating and air-conditioning systems and cannot serve to extend the accrual date of the plaintiff's cause of action (see, Cabrini Med. Center v Desina, 64 NY2d 1059, 1061, supra; Yeshiva Univ. v Fidelity & Deposit Co., 116 AD2d 49, 53-54).

Since "by no rational process could the trier of the facts base a finding in favor of the [plaintiff] upon the evidence * * * presented" (see, Blum v Fresh Grown Preserve Corp., 292 NY 241, 245; Lipsius v White, 91 AD2d 271, 277), the court properly discharged the jury at the close of all the evidence upon finding, as a matter of law, that no physical work on the construction contract was completed on or after December 4, 1973. Accordingly, the court did not err in granting the defendant's motion for summary judgment dismissing the complaint as barred by the six-year Statute of Limitations. Kunzeman, J. P., Weinstein, Rubin and Kooper, JJ., concur.